**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DANA JO VINES, *et al.*,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 2:15-00111-KD-C** |
| | ) | |
| **BILLIE GENE COOK, *et al.*,** | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Defendants' partial motion for summary judgment (Docs. 64-66), Plaintiffs' Response (Docs. 72-74), Defendants' Reply (Docs. 79-81) and Plaintiffs' Surreply (Doc. 84); Defendants' Motion to Strike (Doc. 59), Plaintiffs' Response (Doc. 61), and Defendants' Reply (Doc. 63); Defendants' Motion to Strike as to Holt (Doc. 77) and Plaintiffs' Response (Doc. 82); and Defendants' Motion to Strike as to Fails (Doc. 78) and Plaintiffs' Response (Doc. 83); and Plaintiffs' Motion to Strike exhibits (Doc. 86).

## I.    Background

Stemming from a motor vehicle accident, on October 21, 2014, Plaintiffs (Mr. and Mrs. Vines) initiated this litigation against Defendants Billie Gene Cook and Richard Sisson Trucking, Inc., in the Circuit Court of Dallas County, Alabama, alleging: 1) negligence against both defendants; 2) wanton and reckless conduct against both defendants; 3) negligent, reckless and/or wanton violation of the rules of the road against both defendants; 4) negligent entrustment against Defendant Sisson; and 5) loss of consortium against both defendants.   (Doc. 19 at 14). On December 1, 2014, this action was removed to the Middle District of Alabama (Northern Division) federal court.  (Doc. 19 at 6-12).  On March 3, 2015, after granting a motion to transfer venue on February 27, 2015, this case was transferred to this Court.  (Doc. 19 at 152-156).

II.   **Motion for Partial Summary Judgment**

Defendants move for partial summary judgment on Plaintiffs' claims against Cook for the wanton and reckless operation and driving of the logging truck based on the Alabama Rules of the Road (Counts II and III), and against Sisson for negligent and wanton entrustment of the truck to Cook (Count IV).

A.   **Findings of Fact**[1]

This case stems from an April 3, 2013 motor vehicle accident involving an SUV driven by Plaintiff Mrs. Vines (and occupied by her three children) and an 18 wheeler logging truck driven by Cook for his employer Sisson, which occurred at the intersection of Alabama Highway 219 and U.S. Highway 80, in Selma Alabama.  (Doc. 19 at 15-16).  Specifically, Cook was driving a Sisson logging truck from Philadelphia, Mississippi to Selma, Alabama, en route to the International Paper plant in Selma.  (Doc. 65-3 (Dep. Cook at 45)).  Cook began driving around 2:00 p.m., and the accident occurred at approximately 5:30 p.m.  (Id. at 46-47).  The weather was clear.  (Id. at 81).  Plaintiffs contend that Cook ran a red light at the intersection and collided with their vehicle.  (Doc. 65-12 at Interrog. Resp. #14).

Cook testified that he was abiding by the speed limit, and that he slowed down as he approached the intersection.  (Doc. 65-3 (Dep. Cook at 86- 87).  Cook testified that there was a truck in front of him in the left lane, and he moved over into the right lane as he approached the intersection to get around the truck.  (Id. at 87, 92-94).  Cook believed that he had a green light, and thought the light was green or would still be green when he drove through the intersection.  (Id. at 94-97, 156).  Cook stated that he did not intend to run a red light.  (Id. at 101).  Cook was

---

[1] On summary judgment, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004).

not using a cell phone or texting.  (Id. at 131-132, 163-164); Doc. 65-9 at 12).

After the vehicles collided, the Vines' Ford Expedition spun around and came to a stop. (Doc. 65-11 (Dep. D.J.Vines at 188)).  The logging truck overturned, lost its load, and came to rest in a ditch. (Id.; Doc. 65-3 (Dep. Cook at 107-108)).

Mrs. Vines was transported to Baptist Medical Center South in Montgomery, Alabama, where she was examined, treated and released later that day after she was determined to have no injuries.  (Doc. 65-5).  Mrs. Vines' children were transported to Vaughan Regional Medical Center in Selma, where they were examined and treated for their injuries, and released that day. (Doc. 65-11 (Dep. D.J.Vines at 217-218); Doc. 65-6; Doc. 65-7; Doc. 65-8).

Cook was transported by ambulance to Vaughan Regional Hospital in Selma, and was diagnosed with a concussion.  (Doc. 65-4 at 10).  He was discharged two days later.  (Id.)  A drug and alcohol test was administered to Cook that same day and the results were negative.  (Id. at 9).

Cook had a valid and current commercial driver's license ("CDL") at the time of the accident.  (Doc. 65-2 (Aff. Sisson at 2 and Ex.1)).  Cook was examined by a physician in December of 2012, and had a current medical card that was presented to Sisson when Cook applied for the job in March of 2013.  (Id. at 4 and Ex.1).  Cook had previously worked as a truck driver for Sisson from September of 2008 until February of 2010, and had no accidents. (Id. at 1-2).  Sisson considered Cook to be a good driver. (Id.; Doc. 65-1 (Dep. Sisson at 20-22)).

When Cook left Sisson in 2010, he worked for B&G Wood, Inc. driving log trucks for approximately 2½ years. (Doc. 65-2 (Aff. Sisson and Ex. 1)).  Afterwards, Cook worked for Kent Winstead Logging, Inc., driving a log truck.  (Id.; Doc. 65-3 (Dep. Cook at 14)).  On March 7, 2013, while working for Winstead, Cook had a one-vehicle accident that resulted in only

property damage to a truck. (Doc. 65-2 (Aff. Sisson and Ex. 1); Doc. 65-1 (Dep. Sisson at 16-17, 21); Doc. 65-3 (Dep. Cook at 147-149)). The owner of Winstead, Kent Winstead, told Jim Sisson, President of Sisson, about the accident. (Doc. 65-1 (Dep. Sisson at 16-17, 39-40, 42, 45, 105)). Winstead asked Sisson if he could put Cook to work while Winstead had the truck repaired. (Id.; Doc. 65-2 (Aff. Sisson and Ex. 2)). Sisson agreed, and hired Cook on approximately March 18, 2013. (Doc. 65-2 (Aff. Sisson); Doc. 65-3 (Dep. Cook at 146-147)). After Cook was hired, he drove for Sisson, hauling from Philadelphia, Mississippi to the International Paper plant in Selma, Alabama, and back. (Doc. 65-1 (Dep. Sisson at 38, 40)).

Before he was hired at Sisson in March of 2013, Cook submitted a written job application, a current medical examination report and medical card, a valid social security card, and a copy of his valid/current CDL. (Doc. 65-2 (Aff. Sisson)). Sisson also requested and obtained a copy of the post-accident drug/alcohol test taken on March 7, 2013 when Cook had his accident at Winstead. (Id.; Doc. 65-1 (Dep. Sisson at 14, 16, 44)). The results of this test were negative. (Doc. 65-2 (Aff. Sisson); Doc. 65-1 (Dep. Sisson at 44); Doc. 65-3 (Dep. Cook at 149)). These results were placed in Cook's personnel file at Sisson. (Doc. 65-2 (Aff. Sisson)).

Sisson also verified the dates of Cook's prior employment with Winstead and B & G. (Id.) Both employers stated that Cook had a good driving record, and that he had excellent safety habits, and excellent driving skills. (Id.) They also verified that Cook had never tested positive for a controlled substance. (Id.) They further verified that they would re-employ Cook. (Id.) Sisson personally talked to Winstead (Cook's former employer) about Cook's driving record before Cook was rehired in March of 2013. (Doc. 65-1 (Dep. Sisson at. 42-43)).

Sisson also thinks he may have talked to Chad Grantham, owner of B&G, about Cook's driving record. (Id.). When Cook was first employed by Sisson in 2008, another driver rode

4

with him (a Sisson requirement for new company drivers); however, Cook was not required to do this when he rehired in 2013 as he already knew how to drive a log truck.  (Doc. 65-1 (Dep. Sisson at 19, 22); Doc. 65-3 (Dep. Cook at 34, 36, 153, 156)).   After Cook was rehired Sisson discovered that Cook had a speeding ticket in 2010.  (Doc. 65-1 (Dep. Sisson at 17, 19, 104-105); Doc. 65-2 (Aff. Sisson)).   Other than this ticket, and the accident at Winstead, there were no other negative incidents on Cook's driving record.  (Doc. 65-2 (Aff. Sisson); Doc. 65-1 (Dep. Sisson at 104-105); Doc. 65-3 (Dep. Cook at 39-40)).   Cook's CDL license had never been suspended or revoked.  (Doc. 65-3 (Dep. Cook at 31)).

## B.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a) (Dec. 2010).  The recently amended Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.   "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.   Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

## C.   **Conclusions of Law**

### 1.   **Wantonness/Recklessness – Counts Two & Three**

In Count Two, Plaintiffs allege that Cook wantonly/recklessly operated the truck proximately causing Plaintiffs' injuries and that Sisson is responsible for Cook's actions on the basis of *respondeat superior*, agency and/or employer-employee relationship.   (Doc. 19 at 18). In Count Three, Plaintiffs allege, in relevant part,[2] that Defendants recklessly and/or wantonly violated the rules of the road (i.e., running a red light) causing Plaintiffs' injuries.   (Id. at 19).

As explained in Akers v. Sanderson Farms, Inc., 2015 WL 114221,* 4 (N.D. Ala. Jan. 8,

---

[2] Defendants did not move for summary judgment on the negligence claim contained in Count Three.

2015) (footnote omitted):

> The Alabama Code defines wantonness, as it relates to civil law, as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others." Alabama Code § 6–11–20(b)(3) (1975). Several cases cite Bo*zeman v. Central Bank of the South's* definition of wantonness as the agreed upon definition in Alabama. 646 So.2d 601 (Ala.1994). In *Bozeman*, the Supreme Court of Alabama settled any dispute about the definition of wantonness. The court concluded that wantonness involved "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." 646 So.2d at 603 (citing *McDougle v. Shaddrix*, 534 So.2d 228 (Ala.1988)).

> "Wantonness is a question of fact for the jury, unless there is a[ ] lack of [substantial] evidence from which the jury could reasonably infer wantonness." *Cash v. Caldwell*, 603 So.2d 1001, 1003 (Ala.1992).[ ] "The most crucial element of wantonness is knowledge, and while that element need not be shown by direct evidence it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference ... [I]t may not be left to the conjecture or speculation of the jury." *Roberts v. Brown*, 384 So.2d 1047, 1048 (Ala.1980). *See also Klaber by & through Klaber v. Elliott*, 533 So.2d 576, 579 (Ala.1988) ("Knowledge need not be proven directly but may be inferred from the facts of the case.").

Upon consideration of the evidence before the Court on summary judgment, Plaintiffs fail to present any evidence that Cook was anything other than negligent.  Specifically, Plaintiffs rely upon speculation and conjecture, as "legal" argument.  Plaintiffs claim that Cook was wanton because he consciously disregarded a yellow blinking caution light about ½ mile before the traffic light that warned the light was upcoming, and that Cook consciously chose to beat traffic and run a red light.  (Doc. 72 at 15-16; Doc. 65-12 at Interrog. Resp. #20).  Plaintiffs have submitted no evidence that Cook *consciously* chose to run a red light.  Instead, the evidence supports a finding that Cook thought that the light was green, maneuvered around a truck in front of him in the left lane, and proceeded through the intersection thinking the light was still green.  As such, at most, the evidence demonstrates that the accident involved negligence – via purported *inattentiveness* of Cook resulting in his failure to see a red light and ultimately running a red light.

Additionally, Alabama federal courts have held that a driver's inattention or lack of due care does not rise to the level of conduct necessary to constitute wantonness. See, e.g., Askew v. R &L Transfer. Inc., 676 F.Supp.2d 1298 (M.D. Ala. 2009); Wright v. McKenzie, 647 F.Supp.2d 1293 (M.D. Ala. 2009); Allen v. Con-Way Truckload. Inc., 2012 WL 3775735 (N.D. Ala. Aug. 23, 2012). Alabama courts also refuse to allow wantonness claims in automobile accident cases where a driver violated another's right-of-way or a rule of the road. See, e.g., Thedford v. Payne, 813 So.2d 905 (Ala. 2001) (finding a driver was not wanton where he testified he was looking out the side window, then looked ahead and rear-ended another vehicle); Ex parte Anderson, 682 So.2d 467, 470 (Ala. 1996) (summary judgment on wantonness proper where a light rain was falling and vehicle attempting a turn on the opposite side of the intersection obstructed the defendant's view of oncoming traffic, yet defendant entered the intersection anyway); George v. Champion Ins. Co., 591 So.2d 852 (Ala. 1991) (affirming summary judgment for wantonness for driver who was not watching the road while approaching an intersection and ran a red light because she was talking with backseat passengers); Partridge v. Miller, 553 So. 2d 585 (Ala. 1989) (holding that driver who violated plaintiffs' right of way was not wanton although defendant made a left-hand turn in front of plaintiff who had the right-of way).

Clearly then, to establish wantonness, Plaintiffs must present substantial evidence that Cook consciously did some act or omitted some duty, while knowing of existing conditions and being conscious that from doing or omitting to do such act, injury would probably result. A jury would need a factual basis that Cook saw on-coming traffic and still tried to beat the red light. Plaintiffs have failed to submit such evidence, and have failed to submit any evidence to refute that the accident occurred as Cook testified. Simply put, the fact that Cook saw the green light, then moved around the truck and proceeded through the intersection without realizing that the

8

light had turned red does not prove that he knew, or recklessly disregarded, that he would likely harm others on the road.  At most then, Cook was inattentive and failed to realize the light had turned red.  This alone is not sufficient for wantonness -- there must be something more.  <u>Allen</u>, 2012 WL 3775735, *3 (fact defendant rear ended plaintiff, even though he had visibility of approximately 1750 feet amounted to a failure to maintain a proper lookout which, without more, did not rise to wantonness); <u>Craft v. Triumph Logistics, Inc</u>., 2015 WL 1565003,*2 (M.D. Ala. Apr. 8, 2015) ("If mere inattention, *without something more that contributes to the accident*, that is, *without some exacerbating circumstance,* could constitute wantonness, then the concepts of negligence and wantonness would collapse into one[]") (emphasis in original).  As such, Defendants' motion on this claim is **GRANTED**.

### 2.        Negligent/Wanton Entrustment- Count Four[3]

Plaintiffs contend that Sisson negligently, recklessly and wantonly entrusted the logging truck to Cook because Sisson knew or by exercise of reasonable care should have known that Cook was incompetent to use and operate a commercial motor vehicle.  (Doc. 19 at 19-20).

### a.        Negligent Entrustment

In Alabama, the elements for a negligent entrustment are: 1) an entrustment; 2) to an incompetent; 3) with knowledge that he is incompetent; 4) proximate cause; and 5) damages. <u>Prill v. Marrone</u>, 23 So.3d 1, 8 (Ala. 2009); <u>Halford v. Alamo Rent–A–Car, LLC</u>, 921 So.2d 409, 412 (Ala. 2005); <u>Mason v. New</u>, 475 So.2d 854, 856 (Ala. 1985).  One of the key elements is the incompetence of the driver.  <u>Mason</u>, 475 So.2d at 856.  As explained in <u>Askew</u>, 676 F.Supp.2d at 1303 (internal footnotes omitted):

---

[3] The Court has not considered Lane VanIngen because his opinions are not relevant to whether Cook was competent to drive on the day in question or whether Cook wantonly operated the vehicle.

…"Incompetence" is defined as the "state or fact of being unable or unqualified to do something."….In Alabama, "the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle."…[B]lemishes [2 moving violations and 4 minor accidents over 9 plus years] on an otherwise clean professional driving record do not amount, under the law, to incompetence. The law requires that a driver have had a "demonstrated ability to properly drive a vehicle,"...it does not require that he have a record completely free of mistake….As Holt was not incompetent at the time of the accident, summary judgment in favor of Transfer on Askew's negligent-entrustment claim is appropriate….

Additionally, "'[n]egligence is not synonymous with incompetency. The most competent may be negligent….*But one who is habitually negligent may on that account be incompetent*.'…" Pritchett v. ICN Medical Alliance, Inc., 938 So.2d 933, 941 (Ala. 2006) (internal citations omitted and emphasis in original).

Plaintiffs have not presented sufficient evidence from which a jury could find that Cook was incompetent.  Plaintiffs rely upon the one accident in 2013, as the basis for Cook's alleged incompetency.  However, the law does not require that Cook be a perfect driver or "have a record completely free of mistake."  Southland Bank v. A&A Drywall Supply, Co., Inc., 21 So.3d 1196, 1217 (Ala. 2008).  The evidence of Cook's driving history could not support a finding of incompetency.  First, he had several years of driving experience, including driving logging trucks.  (Doc. 65-3 (Dep. Cook at 14, 31)).  Second, he had a valid CDL license that was never suspended or revoked.  (Id. at 31).  Third, his previous employers testified that Cook had excellent safety habits, and excellent driving skills.  (Doc. 65-2 (Aff. Sisson)); Doc. 65-1 (Dep. Sisson at 21-22)).  Fourth, the only "blemishes" on Cook's driving record were a 2010 speeding ticket and a March 2013 one vehicle accident (resulting in only property damage).  (Doc. 65-2 (Aff. Sisson)); Doc. 65-3 (Dep. Cook at 147-148)).  Fifth, Cook drove the same route on prior occasions without incident.  (Doc. 65-1 (Dep. Sisson at 38, 40)).

As a matter of law, one speeding ticket and one accident do not render Cook

incompetent.  See, e.g., Lanham v. Gnewuch, 2015 WL 3966480, *8-9 (N.D. Ala. Jun. 30, 2015) (two accidents were not sufficient to establish incompetence); Askew, 676 F.Supp.2d at 1303 (two moving violations, four minor accidents, did not establish incompetence); Thedford, 813 So.2d at 912 (one accident did not establish incompetence); Pryor v. Brown & Root USA, Inc., 674 So.2d 45, 52 (Ala. 1995) (two speeding tickets and a suspended DUI charge in the 10 years before the accident did not establish incompetence); and Thompson v. Havard, 235 So.2d 853, 857 (Ala. 1970) (two moving violations or accidents in the two years before the accident is "probably insufficient" to create an issue of fact as to the driver's incompetence).  As enunciated in Wright, 647 F.Supp.2d at 1299-1300 (footnotes omitted):

> …two speeding tickets, [] which Alabama courts have generally held to be insufficient to show a driver's incompetence. *See Pryor v. Brown & Root USA, Inc.*, 674 So.2d 45 (Ala.1995) (holding two speeding tickets within three years of the accident at issue, plus a 10–year–old conviction for DUI, was not sufficient evidence of the driver's incompetence); *Thompson v. Havard*…235 So.2d 853, 857 (1970) ("proof of two moving violations or accidents within a two year period prior to the accident made the basis of the suit is probably insufficient [to create a fact issue of the driver's incompetence]"). Having not been given any reason to find the circumstances of Conner's two speeding tickets uniquely demonstrative of incompetence, the court finds the evidence presented by Wright to be insufficient to create a factual dispute regarding Conner's incompetence as a driver….

Additionally, Plaintiffs reference the weight of the logging truck, 84,280 pounds, as being overweight and not legal to operate on the roadway when the accident occurred.  However, Plaintiffs have failed to show how the truck's weight is related to the accident and/or Sisson's alleged negligent entrustment of the truck to Cook.  Moreover, Defendants reply that the truck was not overweight per the applicable Alabama Code sections, which allow for trucks up to 88,000 pounds, and submit the Affidavit of the Alabama Department of Transportation Assistant Bureau Chief over Vehicle Enforcement for the State Maintenance Bureau confirming same. (Doc. 80 at 11-12; Doc. 65-13 (Aff. Braden)).  The weight of the truck is thus irrelevant.

As such, Defendants' motion on this claim is **GRANTED.**

**b.      Wanton Entrustment**

To establish wanton entrustment, Plaintiffs must establish that Sisson knew or in the exercise of ordinary care should have known, that Cook was incompetent.  See, e.g, Bruck v. Jim Walter Corp., 470 So.2d 1141, 1144 (Ala. 1985).  Specifically, a "claim for wanton entrustment requires a slightly modified analysis because wantonness involves a more aggravated state of mind than that required for negligent entrustment…[It]…is the 'conscious doing of some act...while knowing of the existing conditions and being conscious that, from doing...an act, injury will likely or probably result.'…'…to establish wanton entrustment, [Plaintiffs] must show that [Sisson] entrusted the [truck] to [Cook] while knowing that that entrustment would likely or probably result in injury to others.'…"  Davis, 2012 WL 5954139, *4 (internal citations omitted).

As explained *supra*, Plaintiffs have failed to sufficiently establish negligent entrustment. Additionally, Plaintiffs have neither argued nor submitted evidence on summary judgment of the requisite "more aggravated state of mind" for a wanton entrustment claim (i.e., that Sisson entrusted the truck to Cook while knowing that the entrustment would likely or probably result in injury to others due to Cook's incompetence).  See, e.g., Brewster v. Southern Home Rentals, LLC, 2012 WL 5869282, *4 (M.D. Ala. Nov. 19, 2012) (evidence of two speeding tickets and a hydroplaning wreck did not rise to the level of knowledge that the entrustment would likely or probably result in injury to others).

As such, Defendants' motion on this claim is **GRANTED.**

**III.   Conclusion**

Based on the foregoing, it is **ORDERED** that Defendants' partial motion for summary

judgment (Docs. 64-66) as to Plaintiffs' wantonness/reckless claims against Cook as alleged in Counts Two and Three, and negligent and wanton entrustment claims against Sisson (Count Four) (Docs. 64-66) is **GRANTED**; and Defendants' Motion to Strike as to VanIngen (Doc. 59), Dr. Holt (Doc. 77) and Trooper Fails (Doc. 78) are **MOOT.**[4]

**DONE** and **ORDERED** this the **8th** day of **December 2015**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[4] Defendants did not move for summary judgment on Plaintiffs' claim that Defendants negligently violated the Alabama Rules of the Road causing Plaintiffs' injuries; thus, that portion of Count Three remains pending. Likewise, Defendants did not move for summary judgment on Count One or Count Five and thus, those counts also remain pending in this case.